# United States Court of Appeals
## For the First Circuit

No. 01-2289

STEPHEN DAVID,

Petitioner, Appellant,

v.

TIMOTHY HALL,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

Robert L. Sheketoff for petitioner.
Cathryn A. Neaves, Assistant Attorney General, Criminal
Bureau, with whom Thomas F. Reilly, Attorney General, was on brief
for respondent.

February 5, 2003

**BOUDIN**, **Chief Judge**.    In this case, which raises questions concerning habeas corpus, the relevant dates are important.  On April 13, 1992, petitioner Stephen David pled guilty in a Massachusetts state court to second-degree murder and was sentenced to life imprisonment.  The crime was described in the plea colloquy: briefly stated, David and others, camping at a tent city in Quincy, Massachusetts, killed one of their number (Abraham Champlain) by beating and otherwise mistreating him over the course of several days and leaving him to die of his injuries and exposure to cold.  The members of the group, including David, had consumed alcohol.

No direct appeal was taken from the conviction.  Instead, more than three years after his plea and sentencing, David filed in the trial court two successive motions to withdraw his guilty plea and obtain a new trial, which under state law is a permissible form of collateral attack after a guilty plea.  Constantine v. Commonwealth, 435 Mass. 1011, 1012, 760 N.E.2d 733, 735 (2002).  Both motions were rejected by the trial court and the intermediate appellate court and, in both cases, the Supreme Judicial Court denied review.  The first motion was filed on or about July 17, 1995, and SJC review was denied on December 29, 1997; the second was filed on May 5, 1998, and SJC review was denied on June 29, 2000.  David did not seek certiorari on either ruling from the United States Supreme Court.

-2-

On March 29, 2001, David filed the present habeas proceeding in the federal district court. In his petition, David asserts that, for second degree murder, Massachusetts law required that he know that his actions had a "plain and strong likelihood" of causing Champlain's death. Commonwealth v. Sneed, 413 Mass. 387, 388 n.1, 597 N.E.2d 1346, 1347 n.1 (1992). And, he asserts, the trial judge committed constitutional error by misadvising David at the plea colloquy that an intent to cause injury was sufficient. See Henderson v. Morgan, 426 U.S. 637, 643-46 (1976). He also asserts that, due to his intoxication, a jury could not have found that he had the intent required under state law.

In fact, at the plea colloquy, the trial judge used both phrases, saying that an intent to injure was enough and that there had to be knowledge of "a plain and strong likelihood" of death. But whether the instruction was confusing (the state courts said no) and, if so, whether it constituted a constitutional violation are issues not before us. This is so because in opposing the writ, the Commonwealth pled that regardless of its merits, David's petition came too late under the deadlines fixed for habeas petitions by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq. (2000).

AEDPA, which became effective on April 24, 1996, fixes a one-year limitations period for federal habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). Statutory exceptions exist

-3-

where the state impeded relief, new constitutional rights were created by the Supreme Court, or newly discovered facts underpin the claim, id. § 2244(d)(1)(B)-(D), but David does not claim to fall within any of these exceptions. Absent an exception, AEDPA's one-year limit runs from the time that the state court judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking it. Id. § 2244(d)(1)(A). However, defendants like David, convicted prior to AEDPA, can file their petitions within one year of AEDPA's effective date. Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999).

A magistrate judge recommended dismissal of David's petition on the ground that it was barred by AEDPA's time limit. AEDPA excludes from the one-year period "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The magistrate judge excluded from the calculation the days in which the two state new trial motions were pending (measuring from the dates of their filings to the ultimate SJC dispositions). Even with this exclusion, David's petition was filed 399 days after AEDPA's enactment and, therefore, more than the 365 days allowed. The district court adopted the recommendation.

David then sought a certificate of appealability ("COA"), 28 U.S.C. § 2253(c), which the district court denied. This court

then granted the COA and asked the parties to brief several issues: David's claim that 180 days should be added to the excluded period for the time in which he could have sought certiorari in the United States Supreme Court;[1] his alternative request that the time period be "equitably tolled" because of his attorney's error in filing late; and his claim that the Constitution's Suspension Clause overrides the AEDPA limit when the petitioner asserts that he is actually innocent of the underlying offense. We now address these issues in the same order.

David's first argument--that 180 days should be added to the excluded period--is easily answered. Congress excluded from the one-year period the time during which "a properly filed application for State post-conviction or other collateral review . . . is pending . . . ." Id. § 2244(d)(2). The reason is obvious. During the period when the state courts are reviewing the claims, a federal petition would likely be dismissed or held as premature and would at best simply be held until state remedies were exhausted. 28 U.S.C. § 2254(b)(1)(A).

Nothing in the language or policy of this exclusion warrants adding to the excluded period an additional period during which the petitioner could have, but did not, seek certiorari in

---

[1]A petitioner in a criminal case has 90 days to petition the United States Supreme Court after receiving a final judgment from the highest court of his state. S. Ct. R. 13(1). Because David received two adverse judgments from the SJC, he has asked that the limitations period be tolled 180 days.

the Supreme Court from the denial of collateral remedies. Once the SJC denied review as to the first new trial motion, nothing was pending in either state or federal court nor was any further action ever taken in any court with respect to that motion. The same is true for the second motion. Thus, to say that David's collateral attack proceedings were pending in any court during the 90-day periods after the SJC denials is at odds with ordinary usage.[2]

If anything more were needed, it is supplied by the contrasting language of a companion AEDPA provision. In the ordinary post-AEDPA case, the one-year period (exceptions aside) runs from the later of two dates: "the date . . . the judgment became final by the conclusion of direct review <u>or the expiration of the time for seeking such review</u>." 28 U.S.C. § 2244(d)(1)(A) (emphasis supplied). Thus, if David had been convicted after trial and fought his conviction through the SJC, he would automatically have gotten the benefit of the additional 90 days for seeking certiorari--that is, those days would have been excluded from the one-year period by virtue of the underscored language. No such language appears in the collateral attack provision applicable here.

_____

[2]The state further argues that the reference to "State post-conviction or other collateral review" necessarily excludes the <u>federal</u> certiorari process, so that the result would be the same even if David had filed for certiorari. <u>Duncan</u> v. <u>Walker</u>, 533 U.S. 167 (2001), on which the state heavily relies, is arguably distinguishable and there are language and policy arguments on the other side, but the issue need not be resolved in this case.

David says that he had no direct review remedy under state law because of his guilty plea so that, to create equality of opportunity, the underscored language should be read into the collateral attack provision or the collateral attack should be equated in this case with direct review. This argument has the matter backwards. Congress did not aim at equality: it specifically provided a more generous exclusion of time where direct review was involved and, consistent with the spirit of AEDPA, took a stricter view as to state post-conviction remedies.

David next argues that the running of the limitations period should be equitably tolled because the failure to file the petition within the required period was due to error by David's counsel. The factual premise is an affidavit from counsel stating that he could have filed the petition earlier but did not think this was required. "Equitable tolling" is an umbrella term for the notion that a statute of limitations--unless its time limit is "jurisdictional"--may be extended for equitable reasons not acknowledged in the statute creating the limitations period. See, e.g., Delaney v. Matesanz, 264 F.3d 7, 13-14 (1st Cir. 2001).

Section 2244 does not describe its time limits as jurisdictional, either in its own terms or otherwise, nor does the Commonwealth invoke that label. See Miller v. N.J. State Dept. of Corrections, 145 F.3d 616, 617-18 (3d Cir. 1998). Still, section 2244(d) comprises six paragraphs defining its one-year limitations

-7-

period in detail and adopting very specific exceptions. Congress likely did not conceive that the courts would add new exceptions and it is even more doubtful that it would have approved of such an effort. Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999). AEDPA reflects Congress' view that the courts were being too generous with habeas relief and that the whole system needed to be tightened up. See H.R. Rep. No. 104-518, at 111 (1996).

Nevertheless, many circuits have held or assumed that equitable tolling is available,[3] and we will proceed here on that arguendo assumption. The "exclusion" inference against such a reading of section 2244 is matched, as such rubrics often are, by a counter inference: that Congress acts against the background of existing decisional doctrine unless it negates the doctrine. Young v. United States. 122 S. Ct. 1036, 1040 (2002). This court, although it has never decided whether equitable tolling is permitted under section 2244, Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002), has elsewhere been willing to read AEDPA creatively. See Evicci v. Commissioner of Corrections, 226 F.3d 26, 28 (1st Cir. 2000).

If equitable tolling is available to extend section 2244(d)'s limitations period, it can only do so for the most exceptional reasons. One of AEDPA's main purposes was to compel

---

[3]See e.g., Dunlap v. United States, 250 F.3d 1001, 1004-06 (6th Cir.), cert. denied, 122 S. Ct. 649 (2001); Taliani, 189 F.3d at 598; Miller, 145 F.3d at 617-18 (3d Cir. 1998).

habeas petitions to be filed promptly after conviction and direct review, to limit their number, and to permit delayed or second petitions only in fairly narrow and explicitly defined circumstances. 28 U.S.C. § 2244(d)(1)(A)-(D); H.R. Rep. No. 104-518, supra at 111. To bypass these restrictions for reasons other than those given in the statute could be defended, if at all, only for the most exigent reasons.

Here, the magistrate judge thought, and the district court, agreed, that a mistake by counsel in reading the statute or computing the time limit is, at most, a routine error. Indeed, it would not even constitute "excusable neglect" under Fed. R. App. P. 4(a)(5). See Mirpuri v. ACT Mfg., 212 F.3d 624, 630-31 (1st Cir. 2000). Even apart from AEDPA, the Supreme Court has said that "the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).[4] If carelessness were an escape hatch from statutes of limitations, they would hardly ever bar claims.

David's final argument is that the limitations period, if otherwise applicable to him and unmitigated here by equitable tolling, violates the Constitution. Article I, section 9, clause

---

[4]Unsurprisingly, cases involving capital punishment are sometimes treated differently. E.g., Rouse v. Lee, No. 01-12, slip op. at 12-17 (4th Cir. Jan. 7, 2003) (excusing one day delay due to attorney error in habeas case where petitioner faced death penalty and would not have any other avenue of post-conviction review).

2, provides that the "writ of habeas corpus shall not be suspended," save in cases of rebellion or invasion. David argues that any statutory limitations period that prevents him from presenting a claim predicated on "actual innocence" amounts to an unconstitutional suspension of the writ. Compare Delaney v. Matesanz, 264 F.3d 7, 12 (1st Cir. 2001) (upholding the one year limit only "as a general matter").

Assuming arguendo that the Suspension Clause extends beyond the narrow historical office of the writ, cf. McCleskey v. Zant, 499 U.S. 467, 478 (1991), it could only be violated by enactments that make the writ "inadequate or ineffective to test the legality of (the applicant's) detention." Swain v. Pressley, 430 U.S. 372, 381 (1977). Here, the argument made by David was available to him from April 1992 onward and, excluding the time for exhausting remedies, he had ample time after AEDPA in which to bring his claim within the statutory deadline. In these circumstances, the limitation is not even arguably unconstitutional. Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000).

It would be another matter if David's constitutional claim regarding the misstatement of the elements of the murder came to light only after the limitations period had expired. But Congress has provided that in such a case a petitioner may bring his claim a year from the "date on which the factual predicate of

the claim . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Here, any error at the plea colloquy was immediately apparent, so this alternative starting date has no relevance for David.

Nothing is changed here by David's claim of actual innocence, a claim itself derived from his mistaken-colloquy argument. In general, defendants who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming: pre-trial motions must be filed on time, timely appeals must be lodged, and habeas claims must conform to AEDPA. In particular, the statutory one-year limit on filing initial habeas petitions is not mitigated by any statutory exception for actual innocence even though Congress clearly knew how to provide such an escape hatch.[5]

There is a strong public interest in the prompt assertion of habeas claims. Normally, the grant of habeas relief leaves the state free to retry the petitioner, but this becomes increasingly hard to do as memories fade, evidence disperses and witnesses disappear. A defendant who could not have filed his petition earlier is at least a sympathetic figure; one who has a known

---

[5]In AEDPA Congress adopted a form of actual innocence test as one component of its threshold requirements for allowing a second or successive habeas petition; but it also provided that this second petition is allowed only where the factual predicate for the claim of constitutional error could not have been discovered previously through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B).

-11-

claim, defers presenting it, and then asks to be excused for the delay is unlikely to get cut much slack. A couple of cases have conjectured that actual innocence might override the one-year limit, e.g., Wyzkowski v. Dept. of Corrections, 226 F.3d 1213, 1218-19 (11th Cir. 2000); but to us these dicta are in tension with the statute and are not persuasive.

The actual innocence rubric--a phrase courts use differently in different contexts, see Calderon v. Thompson, 523 U.S. 538, 559-66 (1998)--has been firmly disallowed by the Supreme Court as an independent ground of habeas relief, save (possibly) in extraordinary circumstances in a capital case. Herrera v. Collins, 506 U.S. 390, 417 (1993). By contrast, the Court has used an actual innocence test as a safety valve where an issue was not timely presented in the original trial, Schlup v. Delo, 513 U.S. 298 (1995), but we are not here concerned with a claim forfeited under the cause and prejudice standard.

As it happens, David has not made out a predicate showing of "actual innocence," if the phrase is taken to mean that no jury would likely convict David based on the currently known evidence. This is so even if the jury was here instructed exactly as David says Massachusetts law requires. In the end, the defense would depend largely on whether the jury believed David's own self-serving testimony about his own mental state--a conclusion which,

given his active participation in Champlain's mistreatment over several days, a jury might easily resist.

<u>Affirmed</u>.