Jose GARCIA, Petitioner,

v.

Leonard PORTUONDO, etc., et al., Respondents.

No. 02 Civ.2312 LAK.

United States District Court, S.D. New York.

Sept. 13, 2004.

Jose Garcia, Petitioner pro se.

Nancy D. Killian, Assistant District Attorney, Robert T. Johnson, District Attorney for Bronx County, for Respondents.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Petitioner Jose Garcia is before this Court on a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues that his constitutional rights were violated by the failure of the government to turn over *Brady* materials and by ineffective assistance of counsel. Respondents have moved to dismiss the petition as untimely. Petitioner does not dispute that his petition was filed outside the one year limitations period, but argues

that habeas relief is not foreclosed because he is actually innocent of the crime.

In a report and recommendation dated September 9, 2003 ("Report and Recommendation"), Magistrate Judge Kevin N. Fox recommended that the Court grant respondents' motion to dismiss, finding that petitioner filed his habeas petition nearly two years after the expiration of the limitations period and that petitioner failed to make a showing of actual innocence sufficient to overcome this "procedural" default. Petitioner has objected to the Report and Recommendation.[1]

In light of its *de novo* review of the record, this Court respectfully disagrees with Judge Fox's analysis and recommendation. Thus, petitioner's objections to the Report and Recommendation are sustained, and the respondents' motion to dismiss the petition as untimely is denied.

## I

### The Trial

Petitioner was convicted for the second-degree murder of Cesar Vasquez, a crime of which he maintains his innocence. As much in this case turns on whether evidence not presented to the jury is sufficient to present a credible claim of actual innocence, a brief description of the trial is appropriate.

The prosecution's star witness was Penny Denor, the only testifying eye-witness to the murder. Ms. Denor testified that, on July 16, 1991, the night of the murder, she looked out of her fourth-floor window for her fourteen year-old son, who had not come home for dinner.[2] After spotting her son directly beneath her window, she saw three men with handguns-the driver and two passengers-get out of a blue vehicle that was double-parked near her son.[3] She looked at the face of the driver, at his gun, and back to his face.[4] She testified that she saw the front seat passenger of the car, noticing in particular his "very flowery[,] ... very outstanding" shirt, and the other passenger, another man.[5] Fearing for her son's safety, she ran down the hallway and stairs to the courtyard and heard five or more gunshots.[6] When she arrived in the courtyard, she saw a body lying on the ground and then saw three men run through the gate and into the blue vehicle.[7]

There was no physical evidence linking petitioner to the murder. Instead, the prosecution established petitioner's connection to the murder through the testimony of Ms. Denor and Detective Pezzullo, the detective assigned to the case, in two ways. First, Ms. Denor made an in-court identification of Garcia as the front seat passenger.[8] Second, Ms. Denor testified that she had been present at a lineup approximately five months after the murder. She said she initially identified someone other than number five as the individual in the lineup whom she recognized. Immediately upon leaving the room, however, she said she had told Detective Pezzullo that she had identified the wrong person, implied that she had been afraid to identify the person she actually recognized because a defense lawyer had been present, and told the detective that she knew

1. *See* FED. R. CIV. P. 72(b).

2. Trial Transcript ("Trial Tr.") 237–40.

3. *Id.*

4. *Id.* at 239.

5. *Id.* at 240.

6. *Id.* at 236.

7. *Id.* at 237, 247.

8. *Id.* at 241.

all along that the person she recognized had been the individual in number five position.[9] Detective Pezzullo testified that he was present at the lineup and that petitioner was in the number five position.[10]

The defense attempted to discredit the eye-witness testimony, establishing on cross-examination that Ms. Denor had been under the effects of Valium the night of the murder,[11] that she had testified previously that Valium made her sleepy,[12] that she was on another antidepressant, Thorizine, at the time of the lineup and during trial,[13] and that there were a number of inconsistencies in her testimony.[14]

The defense case consisted of one witness, Griselda Vasquez, the sister of the victim. She testified that, on July 16, 1991, she looked out her window and saw a man who looked like "he had just finished doing something; like a rat"[15] get into a car. She then realized that her brother was lying on the ground and ran down the stairs to the courtyard where she found him dead.[16] Ms. Vasquez stated that she had known petitioner as a friend of her brother's, that she had seen him before many times, and that she did not see him outside her window the night of the murder.[17] The defense attempted also to establish an alibi through Ms. Vasquez, who testified that she telephoned petitioner in Santo Domingo and spoke with him just after the murder occurred.[18] The prosecution established on cross-examination, however, that she had no personal knowledge that petitioner had been in Santo Domingo, as she did not physically dial the telephone but had it handed to her once the call had been placed by someone else.[19] The prosecution attempted to discredit her testimony also with a rebuttal witness, Edmundo Vargas, who testified in substance that he had lived at the apartment complex where the murder occurred and that he had seen Ms. Vasquez with her mother on the night of the murder,[20] contradicting Ms. Vasquez's statement that her mother was not in the country at the time.[21]

*Prior Proceedings*

On January 8, 1993, the jury found petitioner guilty in the Supreme Court of New York, Bronx County, of second-degree

---

9. *Id.* at 258–63.

10. *Id.* at 607.

11. *Id.* at 303.

12. *Id.* at 301.

13. *Id.* at 372.

14. For example, the defense attorney elicited testimony from Ms. Denor on cross-examination that, although she testified on direct that the individual she initially identified at the lineup was in the number four position, she had testified at a previous hearing that the person was in the number two position. *Id.* at 320. Another inconsistency concerned her description of the passenger as wearing a flowery shirt. The defense attorney brought to light that Ms. Denor had testified at a previous proceeding that it was the driver and not a passenger who had worn the flowery

shirt. *Id.* at 326–27. Officer Guest, a police officer in the anti-crime unit who responded to the 911 call the night of the murder, then testified that he had notes from an interview of Ms. Denor on the night of the murder and that she then had described the three men as wearing hooded sweatshirts, with no mention of a flowered shirt. *Id.* at 539–40.

15. *Id.* at 763–64.

16. *Id.* at 765–66.

17. *Id.* at 771–72.

18. *Id.* at 770.

19. *Id.* at 805.

20. *Id.* at 858–59.

21. *Id.* at 797.

murder. On January 19, 1993, he was sentenced to an indeterminate term of imprisonment of twenty-five years to life. His conviction was affirmed by the Appellate Division, First Department, on September 26, 1995,[22] and the New York Court of Appeals denied petitioner's application for leave to appeal on April 4, 1996.[23] By motion dated November 26, 1997, petitioner applied to the Appellate Division for a writ of error *coram nobis*, vacating its decision on the ground of ineffective assistance of counsel, but the motion was denied on July 23, 1998.[24]

On May 10, 1999, petitioner filed his first petition for a writ of habeas corpus, raising no claims but asking instead for an extension of time in which to file an application for habeas relief. This Court granted respondents' motion to dismiss the petition as untimely.[25] Returning to state court, on September 1, 2000, petitioner filed a motion to vacate the judgment of conviction pursuant to N.Y.Crim. Proc. L. § 440.10, which was denied on December 7, 2000.[26] Leave to appeal was denied by the Appellate Division on August 9, 2000.[27]

On April 12, 2002, petitioner sought leave to file a successive habeas corpus petition pursuant to 28 U.S.C. § 2244(b), arguing that his initial petition had not been a habeas petition but a request for an extension of time. In this application, he asserted three grounds for habeas relief: (1) his "actual innocence" of the offense for which he was convicted, (2) Brady violations, and (3) ineffective assistance of counsel. The Second Circuit denied the successive petition application as unnecessary because his initial petition had not been decided on the merits, as it did not raise any claims, and transferred the petition to this Court.[28] Now before this Court are petitioner's objections to Magistrate Judge Fox's recommendation that respondents' motion to dismiss the petition as time-barred under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")[29] be granted.

## II

Under AEDPA, the filing of a habeas corpus petition is governed by a one year statute of limitations.[30] Here, the limitations period began to run on July 3, 1996, the date on which his time to seek certiorari from the Supreme Court expired.[31] His initial petition, the motion for an extension of time to file his petition, was filed May 10, 1999, almost two years after the statute of limitations period expired. Thus, his petition is untimely, and respondents' motion to dismiss should be granted, absent some sufficient reason to reach the merits in spite of the apparent statute of limitations bar.

---

**22.** *People v. Garcia,* 219 A.D.2d 541, 632 N.Y.S.2d 62 (1st Dept.1995).

**23.** *People v. Garcia,* 88 N.Y.2d 847, 644 N.Y.S.2d 694, 667 N.E.2d 344 (1996).

**24.** Respondent Motion to Dismiss, Ex. 6.

**25.** *Garcia v. Portuondo,* No. 99 Civ. 4519(LAK), 2000 WL 246407 (S.D.N.Y. Mar.3, 2000).

**26.** Respondent's Motion to Dismiss, Ex. 13. This motion was denied summarily in handwriting that states, *inter alia,* "Evidence submitted does not tend to establish defendant's alibi." *Id.*

**27.** *Id.,* Ex. 14.

**28.** *Id.,* Ex. 17.

**29.** 28 U.S.C.A. §§ 2254, 2255. In the event the motion to dismiss is denied, respondents request sixty days in which to submit an answer to the habeas petition.

**30.** 28 U.S.C. § 2244(d)(1).

**31.** Report and Recommendation ("R & R") 5.

The Report and Recommendation considered and rejected two possible mechanisms through which petitioner might overcome the procedural bar: equitable tolling for cause and miscarriage of justice. The equitable tolling for cause issue is dealt with adequately in the Report and Recommendation and need not be addressed here.[32] This Court respectfully disagrees with Judge Fox on the handling of the miscarriage of justice claim.

The Report and Recommendation treated the untimeliness of the petition as any other procedural default, assuming without discussion that petitioner therefore "may be excused from the default and obtain federal review of his constitutional claims by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law, or by demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice."[33] Petitioner does not here make a cause and prejudice claim. Thus, the Report and Recommendation proceeded to examine his miscarriage of justice claim, explaining that he might succeed only by demonstrating that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."[34]

The Magistrate Judge correctly identified the standard by which a habeas court should determine whether to reach the merits of a petition that otherwise would be barred because of state procedural defaults or as abusive or successive.[35] In those situations, the actual innocence claim "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."[36] But it is not clear, as the Report and Recommendation assumes, that the actual innocence "gateway" is available to overcome AEDPA's statute of limitations.

As the Second Circuit stated recently, whether the Constitution requires an actual innocence exception to AEDPA's statute of limitations remains an open question.[37] Although the Circuit has declined to reach this question, its most recent decision provides some guidance as to how district courts should approach actual innocence claims such as that made by petitioner here:

> "the district court should examine the following questions sequentially: (1) Did [petitioner] pursue his actual innocence claim with reasonable diligence? (2) If [petitioner] did not pursue the claim with reasonable diligence, must an actual innocence claim be pursued with reasonable diligence in order to raise the issue of whether the United States Constitution requires an 'actual innocence' exception to the AEDPA statute of limitations? (3) If [petitioner] did pursue the claim with reasonable diligence or if reasonable diligence is unnecessary, does [petitioner] make a credible claim of actual innocence? (4) If [petitioner] does make a credible claim of actual innocence, does the United States Constitution require an 'actual innocence'

---

**32.**  *Id.* at 10.

**33.**  *Id.* at 6.

**34.**  *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (internal quotation marks omitted)).

**35.**  *See Alexander v. Keane,* 991 F.Supp. 329, 335 (S.D.N.Y.1998) (collecting cases).

**36.**  *Schlup,* 513 U.S. at 315, 115 S.Ct. 851 (internal quotation marks omitted).

**37.**  *Whitley v. Senkowski,* 317 F.3d 223, 225 (2d Cir.2003); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 114 (2d Cir.2000).

exception to the AEDPA statute of limitations on federal habeas petitions?"[38]

Thus, the Second Circuit has made clear that a court cannot assume, as the Report and Recommendation did here, that the actual innocence gateway is available to overcome AEDPA's statute of limitations bar. Instead, a habeas court confronted with an actual innocence claim must address the *Whitley*-questions in turn.

Petitioner here argues that new and reliable evidence not presented at trial establishes a credible claim of actual innocence. Before addressing the merits of this claim, however, the Court must consider whether petitioner acted with reasonable diligence in pursuing his claim.

### A. *Reasonable Diligence*

■ Petitioner has asserted his innocence from the time of the initial pretrial proceedings. Upon arrest, petitioner filed a notice of alibi, asserting that he was in the Dominican Republic on the night of the murder.[39] This alibi was petitioner's principal defense at trial, and he maintained this position at sentencing as well, stating that he was being sentenced as an innocent man.[40] Since his sentencing, petitioner has pursued direct appeals and collateral attacks in the state courts, arguing, *inter alia,* that the jury verdict was against the weight of the evidence and that the prosecution withheld and his attorney failed to pursue exculpatory materials, resulting in exculpatory evidence not being presented

to the jury.[41] Petitioner made a request for documents collected in the district attorney's original investigation into his alibi pursuant to the New York Freedom of Information Law ("FOIL"),[42] as well as applications in front of this Court for habeas relief.

While the initial habeas petition was not filed until three years after petitioner's judgment of conviction became final, and he did not make his FOIL request until one year after that, the Court notes that he is proceeding *pro se* and lacks proficiency in the English language. Moreover, this is not a situation where petitioner waited any substantial amount of time before challenging his conviction—he has brought numerous challenges over the past 11 years. The Court is unwilling to find in this situation that petitioner has not pursued his actual innocence claim with reasonable diligence.

### B. *Credibility of Actual Innocence Claim*

■ The next question is whether petitioner makes a credible claim of actual innocence. The Report and Recommendation correctly states that in order to make out a credible claim of actual innocence, "a petitioner must present 'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'"[43] As the Supreme Court has stressed, "'actual innocence' means factual innocence, not mere legal insufficiency."[44]

---

**38.** *Whitley,* 317 F.3d at 225–26.

**39.** Petitioner's Reply to Respondent's Motion to Dismiss ("Pet'r Reply") 14.

**40.** Sentencing Tr. 24.

**41.** Petitioner's Memorandum of Law in Support of Habeas Petition ("Pet'r Habeas Mem.") 31–37.

**42.** *See* N.Y. Pub. Off. Law § 87 (McKinney 2001).

**43.** *Lucidore,* 209 F.3d at 114 (quoting *Schlup,* 513 U.S. at 327–28, 115 S.Ct. 851) (internal quotation marks omitted).

**44.** *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

Thus, to succeed on his claim, petitioner must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

The Report and Recommendation explicitly considered five types of evidence offered by petitioner as proof of his actual innocence: (1) correspondence between employees of the Bronx County District Attorney and various individuals subpoenaed or contacted by that office during the pre-trial investigation of petitioner's alibi defense, (2) statements of representatives of the international airport in the Dominican Republic, where petitioner allegedly was arrested the day before the murder, and of members of the country's national police attesting to his incarceration, (3) information concerning flights destined for the United States which departed after petitioner's alleged release from prison on the day of the murder, (4) affidavits of five individuals stating that each saw and spoke to petitioner in the Dominican Republic on the night of the murder, and (5) selected entries from a directory of prescription drugs.[45]

Ultimately, the Report and Recommendation found all of these submissions insufficient to support petitioner's actual innocence claim. The issue of the additional documents regarding the effects of Valium and Thorizine, drugs Ms. Denor admitted to using at the time of the murder, lineup and trial, was dealt with sufficiently in the Report and Recommendation and need not be repeated here.[46] But the Report and Recommendation rejected also petitioner's additional alibi evidence.

The Magistrate Judge found that the evidence concerning petitioner's incarceration in the Dominican Republic was not new, as its admissibility had been discussed at a colloquy between the trial judge and attorneys and that, even if it was new evidence, it failed to establish petitioner's actual innocence, as he was released from prison in the Dominican Republic hours before the murder in New York.[47] The Report and Recommendation found the affidavits insufficient as well on the theory that they were cumulative of Ms. Vasquez's testimony that she had spoken with petitioner on the night of the murder and that he was in Santo Domingo.[48] This Court respectfully disagrees with the Magistrate Judge's analysis of the additional alibi evidence.

■ To begin with, the Report and Recommendation suggests that only newly discovered evidence which would have been admissible at trial can be considered by a habeas court on an actual innocence claim. But the Second Circuit has not answered this question in the post-*Schlup* era. Moreover, the Supreme Court suggested in *Schlup* that "new evidence" for this purpose is not restricted to admissible evidence discovered after trial. The Court there stated, "[i]n assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial .... [but may] consider the probative force of relevant evidence that was either excluded or unavailable at trial."[49] Moreover, the habeas court must make its determination "in light of all the evidence, including ... evidence tenably claimed to

---

45. R & R 7–8.

46. There was sufficient cross-examination of Ms. Denor on the effects of these drugs at trial and the jury carefully considered her credibility.

47. R & R 8.

48. *Id.*

49. *Schlup,* 513 U.S. at 327–28, 115 S.Ct. 851 (emphasis added).

have been wrongly excluded or to have become available only after the trial."[50] This Court therefore does not understand "new" evidence to be limited to that unavailable at trial, so long as it is evidence that the original fact finder did not then consider.[51] Accordingly, under *Schlup*, the evidence concerning petitioner's incarceration in the Dominican Republic as late as the afternoon of the day on which the murder was committed in New York[52] and the additional alibi witnesses should have been considered, despite the fact that at least the former was a subject of discussion among the trial judge and counsel,[53] because this evidence was never admitted at trial.

■ Second, the Court does not agree with the Report and Recommendation's conclusion that the additional evidence would be insufficient to make out a credible actual innocence claim. Contrary to the view taken there, it is not cumulative of the alibi evidence presented at trial. The only alibi evidence presented to the jury was the testimony of Ms. Vasquez, who said that she had spoken with petitioner by telephone after her brother's murder and that he then was in the Dominican Republic at the time.[54] But the prosecuting attorney discredited that testimony, establishing that Ms. Vasquez had no personal knowledge regarding petitioner's whereabouts at the time of their conversation. Petitioner's documentation concerning his incarceration on July 15, 1991 and his release on the day of the murder, as well as the five affidavits from individuals attesting to his presence in the Dominican Republic on the evening of the murder, would have corroborated Ms. Vasquez's testimony and constituted much stronger alibi evidence which the prosecution then would have had to disprove.

The jury heard no evidence relating to petitioner's incarceration in the Dominican Republic on July 15th and his release on the afternoon of the murder. That such evidence substantiates the alibi testimony offered by Ms. Vasquez does not make it cumulative. Nor does the fact that petitioner was released from prison hours before the murder make the evidence immaterial to a determination of

**50.** *Id.* at 328, 115 S.Ct. 851 (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. CHI. L.REV. 142, 160 (1970) (internal quotation marks omitted)).

**51.** This approach is consistent with that taken by other circuits and district courts in this Circuit. *See Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir.2003) (evidence does not need to be newly available, just newly presented); *Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir.2003) (same); *Alexander*, 991 F.Supp. at 339–40. *But see Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir.2001) (must be evidence not known at time of trial); *Coleman v. Miller*, No. CV 99–3981(RR), 2000 WL 1843288, at *7 (E.D.N.Y. Oct. 16, 2000) (same).

**52.** The documents in dispute consisted of an attestation to petitioner's arrest and incarceration as well as release papers, all certified as original documents from the Dominican Republic. The prosecutor opposed the admission of these documents, arguing that the certification did not attest to the truthfulness of the facts and that the People might dispute even the statement that petitioner was incarcerated at all during that time period While this Court properly may consider the documents irrespective of their admissibility for purposes of the actual innocence analysis, petitioner argues in his habeas petition that the prosecuting attorney was not truthful in disputing the veracity of these documents. In his FOIL request, petitioner learned that the assistant district attorney originally assigned to his case had investigated the alibi and received information consistent with the documents—that petitioner was incarcerated on July 15, 1991 in the Dominican Republic. *See* Pet'r Habeas Mem., Ex. 5 at A1–A15.

**53.** Trial Tr. 71–86.

**54.** *Id.* at 770.

actual innocence. It perhaps is possible, as the Report and Recommendation suggests, that petitioner could have been released from prison and still made a plane to New York in time to commit the murder.[55] Even if that were so, however, the fact that petitioner might have made a flight after his release from prison in Santo Domingo falls far short of proof beyond a reasonable doubt that he did make such a flight.[56] The relevant inquiry is whether petitioner has demonstrated that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him. While this is a heavy burden, it is not so heavy as to demand that petitioner show for certain that he was not on any of these flights. The fact that petitioner was in jail in another country hours before the murder, especially when considered with all of the other alibi evidence, argues strongly against his participation in the murder, even without knowing whether he could have made the plane to New York.

The affidavits from five individuals attesting to petitioner's presence in the Dominican Republic on the night of the murder are especially material to petitioner's alibi defense.[57] Each of these individuals would have corroborated Ms. Vasquez's testimony and independently established an alibi for petitioner on the night of the murder. One affiant, Alsacia Encarnacion, would have provided particularly strong corroboration of Ms. Vasquez's testimony, as she declares in her affidavit that she personally received the phone call from Ms. Vasquez at her home in the Dominican Republic on the night of the murder and that it was she who located petitioner and brought him to the phone.[58] Petitioner's wife states in her affidavit that she was with petitioner from the time he was released from prison at 3:00 p.m. throughout the night of the murder.[59] The other three affiants state that they saw petitioner on the evening of the murder in the Dominican Republic and that they would have been willing to testify to that effect at trial.

Certainly, this Court must consider the credibility of these additional alibi witnesses. One of the affiants is petitioner's

---

**55.** The exact time at which petitioner was released from prison on July 16, 1991 is unclear. The documents evidence that bail was paid at 2:00 p.m. of that day. Petitioner claims in his papers that he was not processed and released until 3:30 p.m., *see* Pet'r Obj. to R & R 5, but the affidavit to which he points in support states the time was 3:00 p.m., *see* Pet'r Reply, Ex. C at E1. Either way, there is a discrepancy between these statements and the official document establishing that bail was paid at 2:00 p.m. *See* Pet'r Habeas Mem., Ex. 4 at H3–11.

The flight schedule shows that two flights left for New York after 2:00 p.m. from Puerto Plata on July 16, 1991, one at 2:04 p.m. and one at 3:53 p.m. Pet'r Habeas Mem., Ex. 4 at H4–8–2. Moreover, two flights left from the Santo Domingo airport for New York after 3:00 p.m. that day. *Id,* Ex. 4 at H4–8–1. While the time in which petitioner could get from the prison to the airport is unsubstantiated, petitioner claims it is a one hour drive. *See* Pet'r Objections to R & R 5.

**56.** Moreover, the documents obtained through petitioner's FOIL request demonstrate that the District Attorney subpoenaed flight passenger lists for these flights. *See id.,* Ex. 5 at A12. While the names of the passengers are unreadable, it seems likely that, had petitioner been listed as a passenger on one of these flights, the District Attorney would have brought such information to the jury's attention. Certainly, it is possible that petitioner flew under an assumed name, especially given that his arrest on the day prior to the murder pertained to use of false documentation in leaving the country.

**57.** *See id.,* Ex. 4 at A1–E3.

**58.** *Id.* at A1.

**59.** *Id.* at E1.

wife, another his mother-in-law. Obviously, these individuals have reason to lie to protect petitioner. But the other three affiants are not relatives and stated in their affidavits that they knew petitioner not as a personal friend but as a neighbor. One was a seventeen year-old boy at the time in question. This Court does not agree with the Magistrate Judge's conclusion that these affidavits were not "the kind of evidence that supports a claim of actual innocence." [60]

For these reasons, petitioner has made a credible claim of actual innocence, as the evidence is "so strong that [the Court] cannot have confidence in the outcome of the trial." [61] As a result, assuming that an actual innocence exception to the statute of limitations exists, "the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." [62] In other words, if there is an actual innocence exception to the statute, petitioner is entitled to attempt to show that his trial was tainted by "nonharmless constitutional error." [63] It is to this final question, the availability of the actual innocence gateway in cases of petitions other-

wise barred by AEDPA's statute of limitations, that the Court now turns.

## C. Actual Innocence Exception to AEDPA's Statute of Limitations

Whether the United States Constitution requires an "actual innocence" exception to the AEDPA one-year statute of limitations on federal habeas petitions is a novel question of constitutional law. Although several courts have suggested that a complete procedural bar to federal habeas review for a prisoner who makes a credible claim of actual innocence would raise significant questions under the Due Process Clause, the Eighth Amendment, and the Suspension Clause, none has decided the issue.[64]

### 1. Due Process

■ A procedural rule governing how a law is carried out "is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." [65] The Supreme Court has observed that "concern about the injustice that results from the conviction of an inno-

---

60. R & R 9.

61. *Schlup,* 513 U.S. at 316, 115 S.Ct. 851.

62. *Id.*

63. *Id.*

64. *See Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 114 (2d Cir.2000); *Triestman v. United States,* 124 F.3d 361, 379 (2d Cir.1997); *Hamilton v. Miller,* 292 F.Supp.2d 437, 456 (E.D.N.Y.2003); *Russo v. United States,* 313 F.Supp.2d 263, 267–68 (S.D.N.Y. 2004); *Alexander v. Keane,* 991 F.Supp. 329, 337 (S.D.N.Y.1998).

65. *Medina v. California,* 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (citations and internal quotation marks omitted). The Supreme Court has established this "deeply rooted principle" standard as the test for procedures governing criminal laws. *See*

*id.* Although habeas often is described as a civil action, *see, e.g., Murray v. Giarratano,* 492 U.S. 1, 8, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (quoting *Pennsylvania v. Finley,* 481 U.S. 551, 556–57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)), the Supreme Court has distinguished habeas proceedings from other civil actions because they review criminal judgments and, as a result, imported some standards from criminal law into habeas practice. *See O'Neal v. McAninch,* 513 U.S. 432, 440, 442, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). In *O'Neal,* for example, the Court rejected the civil standard of review for trial error where the reviewing judge has grave doubt about whether the error resulted in prejudice to the defendant, explaining: "the errors being considered by a habeas court occurred in a *criminal* proceeding, and therefore, although habeas is a civil proceeding, someone's custody, rather than mere civil liability, is at stake." *Id.* at 440, 115 S.Ct. 992. Because habeas is

cent person has long been at the core of our criminal justice system." [66] It has noted further that it is "a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." [67] Given the centrality of this concern over conviction of the innocent, the Second Circuit has written that "it is certainly arguable ... that the continued imprisonment of an actually innocent person would violate just such a fundamental principle" of justice. [68] Indeed, in *Herrera v. Collins,* [69] the Supreme Court indicated that innocence has a constitutional dimension, assuming, but not deciding, "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of defendant unconstitutional and would warrant federal habeas relief if there were no state avenue open to process such a claim." [70]

The Supreme Court has not limited this concern to capital cases. In *Murray v. Carrier,* [71] it recognized that, in some cases, where a "constitutional violation has probably resulted in the conviction of one who

is actually innocent," the "imperative of correcting a fundamentally unjust incarceration" would force other important habeas principles such as comity, federalism, and a State's interest in the finality of its criminal court judgments to yield. [72] In response to this imperative, the Court created a "miscarriage of justice" exception to allow for review of an otherwise defaulted claim where the petitioner could establish actual innocence and a constitutional violation. [73] The Supreme Court consistently has reaffirmed the existence of an exception for actual innocence where a petitioner's lack of compliance with procedural requirements otherwise would bar review. [74] The Court's creation of an exception for actual innocence in cases suggests that the incarceration of one who is innocent is so repugnant to the traditions and conscience of our people that, where the writ of habeas corpus is provided for, it may not be denied on procedural grounds for one who is innocent. [75] But this Court is bound to avoid a constitutional determination with respect to the AEDPA statute of limitations if it reasonably may "con-

---

a unique civil action that incorporates some aspects of criminal law, the Second Circuit has used the *Medina* standard to determine whether a procedural rule governing federal habeas corpus violates the Due Process Clause. *See Triestman,* 124 F.3d at 379. This Court follows the circuit court in applying the *Medina* standard to the statute of limitations.

**66.** *Schlup,* 513 U.S. at 325, 115 S.Ct. 851.

**67.** *Id.* (quoting *In re Winship,* 397 U.S. 358, 372, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

**68.** *Triestman,* 124 F.3d at 379.

**69.** 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

**70.** *Id.* at 417, 113 S.Ct. 853.

**71.** 477 U.S. 478, 106 S.Ct. 2639 (1986).

**72.** *Id.* at 495–96, 106 S.Ct. 2639.

**73.** *Id.* at 496, 106 S.Ct. 2639; *see also McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (actual innocence required to overcome bar to petitions as abusive); *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality op.) (showing of actual innocence necessary to allow a federal court to consider successive petitions).

**74.** *See, e.g., Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Schlup,* 513 U.S. at 320–22, 115 S.Ct. 851.

**75.** Of course, in determining whether the application of the statute of limitations in these circumstances would violate the Due Process Clause, this Court first must be satisfied that the Fifth Amendment is applicable. Petitioner is in state custody and seeks federal habeas review of his state court judgment of conviction. The procedural bar at issue, however, is one of Congress' making. Thus, while the

strue [that] statute to avoid constitutional questions." [76] If the statute of limitations is equitably tolled in the extraordinary case of a fundamental miscarriage of justice, it would be unnecessary to decide whether the Due Process Clause requires an actual innocence exception to the limitations period. [77] Accordingly, the Court must consider whether the statute is equitably tolled here.

## 2. *Equitable Tolling*

■■■ The Second Circuit, as well as nearly every other court of appeals, has

held that AEDPA's one year filing period is a statute of limitations subject to equitable tolling. [78] The doctrine of equitable tolling allows courts "to make narrow exceptions to the statute of limitations in order 'to prevent inequity.' " [79] The courts have tolled the statute in "rare and exceptional circumstances," [80] such as instances of egregious attorney misconduct, [81] the intentional confiscation of legal papers by prison authorities, [82] serious physical or mental illness which prevents the petition-

Fifth Amendment clearly governs actions of Congress, it is the state that allegedly is violating due process by the continued incarceration of an allegedly innocent person.

Encountering a petitioner in a similar posture, in *Alexander v. Keane*, 991 F.Supp. 329 (S.D.N.Y.1998), then district Judge Sotomayor questioned the applicability of the Fifth and Eighth Amendments, explaining: "It is not clear how either the Eighth Amendment or the Fifth Amendment (or, for that matter, the Fourteenth Amendment Due Process Clause) applies when, as here, a *state* is imposing the punishment but it is access to the *federal* courts that is sought." *Alexander*, 991 F.Supp. at 336 n. 5. She further noted:

"assuming ... that the state incarceration of an innocent person raises significant constitutional concerns, those would not be issues under the Eighth Amendment *itself* but only as it is incorporated through the Fourteenth Amendment; yet, it is difficult to see how the Fourteenth Amendment, directed as it is against the states, can serve to restrict *Congress's* ability to limit access to federal habeas." *Id.*

The court concluded that the only constitutional issue raised by the petitioner's claim was the Suspension Clause, Art. 1, § 9, cl.2, of the United States Constitution. *Id.*

Unlike the petitioner in *Alexander*, petitioner here has established a credible actual innocence claim based on new evidence and has claimed violations of his constitutional rights at his trial. In *Triestman v. United States*, 124 F.3d 361 (2d Cir.1997), the Second Circuit suggested that the Fifth Amendment's due process and equal protection guarantees would be implicated where "a set of laws that permits review in *some* cases, but denies re-

view to the actually innocent who could not have established their innocence at trial." *Id.* at 379 n. 22. Of course, in *Triestman*, the court was considering when a federal prisoner barred from seeking relief under 28 U.S.C. § 2255 may be entitled to proceed with a writ of habeas corpus pursuant to Section 2241. In that situation, the Fifth Amendment clearly was applicable. However, since Congress has extended federal habeas review to state prisoners, the question of whether it may be denied on procedural grounds to a petitioner who credibly establishes actual innocence here implicates the Due Process Clause of the Fifth Amendment as well.

**76.** *Arnett v. Kennedy*, 416 U.S. 134, 162, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

**77.** Indeed, the Second Circuit has noted that equitable tolling may offer an avenue for avoiding constitutional issues that may arise by a strict application of the AEDPA statute of limitations. *See Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir.2000).

**78.** *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000).

**79.** *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir.2003); *see also Johnson v. Nyack Hospital*, 86 F.3d 8, 11 (2d Cir.1996).

**80.** *Smith*, 208 F.3d at 17.

**81.** *Baldayaque v. United States*, 338 F.3d 145, 152–53 (2d Cir.2003).

**82.** *Valverde v. Stinson*, 224 F.3d 129, 133 (2d Cir.2000).

er from filing,[83] or "[w]here a petitioner, through no fault of his own, first learns of the outcome of a final appeal after the time for seeking habeas has expired." [84]

■ In addition to establishing the existence of a rare and exceptional circumstance, a petitioner seeking a toll ordinarily must demonstrate that the circumstance prevented the timely filing of a petition for habeas corpus.[85] As the Second Circuit has explained, the petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." [86] The petitioner has the burden to establish also that he acted with reasonable diligence during the period he seeks to toll.[87]

■ Petitioner's claim of actual innocence does not meet this causation standard.[88] Rather, he asks this Court to find that the statute is tolled, irrespective of causation, wherever a constitutional violation has resulted in the incarceration of one who is actually innocent.[89] In *dicta*, the Tenth Circuit has acknowledged that actual innocence is an exceptional circumstance which justifies tolling absent causation.[90] This circuit has not extended the equitable tolling doctrine beyond cases in which the petitioner has been prevented from timely filing. In determining whether to extend equitable tolling to allow for review in cases of manifest injustice, this Court is mindful that equitable tolling is to be applied sparingly [91] and then only if it is not inconsistent with the statutory text.[92]

Federal habeas principles seek to balance the writ's role as the " 'highest safeguard of liberty' . . . while at the same time avoiding serious, improper delay, expense, complexity, and interference with a State's interest in the 'finality' of its own legal processes." [93] To this end, prior to

**83.** *Rhodes v. Senkowski*, 82 F.Supp.2d 160, 173 (S.D.N.Y.2000).

**84.** *Hunter v. Greiner*, No. 99 Civ. 4191(SAS), 2000 WL 245864, at * 3 (S.D.N.Y. Mar.3, 2000) (quoting *Vasquez v. Greiner*, 68 F.Supp.2d 307, 309 (S.D.N.Y.1999))

**85.** *Valverde*, 224 F.3d at 134.

**86.** *Id.*

**87.** *Smith*, 208 F.3d at 17.

**88.** R & R 10.

**89.** Pet'r Objections to R & R 6.

**90.** *Burger v. Scott*, 317 F.3d 1133, 1141 (10th Cir.2003); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.1998). The First and Fifth Circuits, on the other hand, have suggested in *dicta* that such an exception would be inconsistent with the statute. *See David v. Hall*, 318 F.3d 343, 347 (1st Cir.2003); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000). Notably, unlike Mr. Garcia, neither the *David* nor *Feld-* er petitioners met the threshold showing of a credible claim of actual innocence based on new evidence. In *Felder*, the petitioner merely claimed innocence without making a credible showing, which, as the court noted, is not a rare event. *Felder*, 204 F.3d at 171.

**91.** *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

**92.** *See United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998).

**93.** *Lonchar v. Thomas*, 517 U.S. 314, 322–23, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996) (internal citation omitted). AEDPA has incorporated these federal habeas principles. *See, e.g., Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (construing AEDPA as incorporating earlier habeas corpus principals); *Williams v. Taylor*, 529 U.S. 420, 436–37, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (considering the purposes of AEDPA and analyzing them with respect to prior Supreme Court cases and habeas principles).

the enactment of AEDPA, Congress and the courts imposed procedural rules to limit federal habeas petitions, including exhaustion requirements and restrictions on successive or abusive petitions. However, to ensure that federal courts were not barred from hearing a petition on procedural grounds where there had been a miscarriage of justice, the Court carved out two narrow exceptions to these procedural rules.[94] The first, and primary, exception is that for "cause and prejudice," which allows review where the petitioner establishes cause for the procedural default and actual prejudice therefrom.[95] This exception is similar to the requirement of a causal link between the extraordinary circumstance and the untimely filing to toll the limitations period.[96]

The second exception, relevant to the instant case, is far more narrow, and allows habeas review in cases where there has been a fundamental miscarriage of justice and the petitioner establishes a credible claim of actual innocence. This so-called actual innocence or miscarriage of justice exception is applicable only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."[97] The Supreme Court recognized this exception to allow a federal habeas court to grant the writ even in the absence of cause for the procedural default.[98] In order to ensure that this exception is exceedingly narrow, the Court tied it to a showing of actual innocence.[99] As the Court explained, because actual innocence is such a rare event, the manifest injustice exception is able to balance "both systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.' "[100]

As with the actual innocence or miscarriage of justice exception to other procedural bars to review, a toll for actual innocence would be consistent with AEDPA and its objectives of avoiding undue delay and promoting finality.[101] Moreover, the rarity of a credible claim of actual innocence ensures that equitable tolling on this basis rarely will occur. Nevertheless, an actual innocence toll would be appropriate only if it would not conflict with the statutory language creating the time limit.[102]

In considering whether the statute reasonably admits of a construction permitting equitable tolling in the rare case of a credible claim of actual innocence, a useful starting point is 28 U.S.C. § 2244(b)(2), which provides in relevant part:

> "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a

**94.** *See Wainwright v. Sykes*, 433 U.S. 72, 91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

**95.** *See Dretke v. Haley*, —— U.S. ——, 124 S.Ct. 1847, 1852, —— L.Ed.2d —— (2004); *Schlup v. Delo*, 513 U.S. 298, 320–21, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Wainwright*, 433 U.S. at 87, 97 S.Ct. 2497.

**96.** *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)

**97.** *Carrier*, 477 U.S. at 496, 106 S.Ct. 2639.

**98.** *Id.*

**99.** *Schlup*, 513 U.S. at 321, 115 S.Ct. 851.

**100.** *Id.* at 322, 115 S.Ct. 851.

**101.** *Cf. Calderon v. Thompson*, 523 U.S. 538, 558, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) ("The miscarriage of justice exception is altogether consistent ... with AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence.").

**102.** *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998).

prior application shall be dismissed unless ... (B)(ii) the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

The statute provides, in other words, that claims presented in second or successive habeas petitions shall be rejected unless, *inter alia,* the underlying facts make out a substantial claim of actual innocence. But there is no express provision in the statute allowing a credible showing of actual innocence to trump, or toll the running of, the one year statute of limitations.[103] This absence has led the First Circuit to conclude that there is no actual innocence exception to the one year statute of limitations.[104] But this view ultimately is not convincing.

To begin with, the text of Section 2244(b)(2), in this Court's view, cuts exactly the other way. It is difficult to imagine that a Congress that explicitly allowed the maintenance of a second or successive petition where the applicant makes out a strong claim of actual innocence implicitly intended to foreclose as untimely an initial petition brought by an individual with a comparable claim. This is especially so given that the restrictions on filing successive petitions in Section 2244(b) were intended to codify and tighten previously imposed limits successive and abusive petitions.[105] Nor should too much weight be placed on the omission of an express equitable tolling provision for initial petitions. Congress enacted the restrictions on second and successive petitions in Section 2244(b) against a well-developed set of procedural rules and exceptions. Section 2244(b)(2) was based, in part, on the already existing exception for actual innocence to the prohibition on successive and abusive petitions.[106] In contrast, AEDPA's creation of a fixed statute of limitations for federal petitions was a new addition to the legal landscape.[107] Prior to AEDPA, the only time limit on filing was the doctrine of laches, which barred review where a petitioner's delay had caused some prejudice to the state.[108] In this context, at least two Justices of the Supreme Court have found that equitable concerns may be appropriate in filling "in

**103.** Section 2244(d)(1) does give a petitioner who is not chargeable with knowledge of the factual predicate of a habeas claim the benefit of a deferral of the commencement of the limitation period. 28 U.S.C. § 2244(d)(1)(D).

**104.** *David v. Hall,* 318 F.3d 343, 347 (1st Cir.2003).

**105.** *See, e.g., Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); 1 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, § 2.5, at 99 (4th Ed.2001). *cf. Williams v. Taylor,* 529 U.S. 420, 433–34, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) (finding that the opening clause of 28 U.S.C.A. § 2254(e)(2) codifies an earlier judicially created standard for diligence); *Slack v. McDaniel,* 529 U.S. 473, 483, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (con-

cluding that AEDPA's provisions governing the certificate of appealability incorporate earlier habeas corpus principals).

**106.** *See McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (actual innocence required to overcome bar to petitions as abusive); *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality op.) (federal courts only required to hear successive petitions where petitioner alleges constitutional claim and establishes a colorable showing of actual innocence).

**107.** *See, e.g., Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted).

**108.** *Id.*

a perceived omission on the part of Congress." [109]

The view that an equitable toll is appropriate where a petition makes out a credible claim of actual innocence draws additional support from the text of the statute of limitations itself, Section 2244(d)(1).[110] It provides that the one year limitations period begins to run on various alternative dates, among them "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." [111] Thus, a petitioner is entitled to deferral of the running of the limitations period where the factual basis for relief unrelated to guilt or innocence justifiably is discovered belatedly. The case for relaxation of the rigor of the statute of limitations arguably is far more compelling in the case of a petitioner who makes a credible claim of actual innocence.

In all the circumstances, this Court holds that the running of the AEDPA statute of limitations is equitably tolled in the exceedingly rare case in which the petitioner makes out a credible claim of actual innocence. This is such a case. Accordingly, it is unnecessary for this Court to determine whether the Constitution requires an actual innocence exception to the statute.

*Conclusion*

For the foregoing reasons, petitioner's objections to the Report and Recommendation are sustained. Respondent shall answer the petition within thirty days.

SO ORDERED.

---

**109.** *Duncan v. Walker,* 533 U.S. 167, 184, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring). Joining Justice Stevens's concurrence, Justice Souter wrote separately to note that "a claim for equitable tolling could present a serious issue on facts different from those before us." *Id.* at 182, 121 S.Ct. 2120 (Souter J., concurring).

**110.** 28 U.S.C. § 2244(d)(1) reads as follows:
"A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

**111.** 28 U.S.C. § 2244(d)(1)(D).