**Shaun M. FINN, Petitioner**

v.

**Michael THOMPSON, et al, Respondents.**

**C.A. No. 06–30077–MAP.**

United States District Court, D. Massachusetts.

July 19, 2007.

Harry L. Miles, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, for Petitioner.

Jonathan M. Ofilos, Office of the Attorney General, Boston, MA, for Respondents.

*MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION WITH REGARD TO RESPONDENTS' MOTION TO DISMISS AND PETITIONER'S MOTION FOR EVIDENTIARY HEARING*

PONSOR, District Judge.

Petitioner, a state prisoner serving a fifteen to sixteen-year sentence for rape of a child with force, seeks *habeas* relief pursuant to 28 U.S.C. § 2254. Respondents filed a Motion to Dismiss the Petition, which was referred to Chief Magistrate Judge Kenneth P. Neiman for a report and recommendation. On June 6, 2007, Judge

**10.** I will address the Chapter 93A claim after trial.

Neiman issued his Report and Recommendation, to the effect that Respondents' Motion to Dismiss be allowed and Petitioner's Motion for Evidentiary Hearing be denied. Petitioner thereafter filed a timely objection to the Report and Recommendation (Dkt. No. 29).

A lengthy discussion is unnecessary. Petitioner's request for relief clearly collides with the one-year limitation period set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1)(A). For the reasons well articulated by Judge Neiman, the doctrine of equitable tolling does not save this petition.

Based on the foregoing, upon de *novo* review, the court hereby ADOPTS the Report and Recommendation (Dkt. No. 27) of Chief Magistrate Judge Neiman dated June 7, 2007. Respondents' Motion to Dismiss (Dkt. No. 9) is hereby ALLOWED and Petitioner's Motion for an Evidentiary Hearing (Dkt. No. 22) is hereby DENIED. The clerk is ordered to enter judgment for Respondents. This case may now be closed.

It is So Ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO RESPONDENTS' MOTION TO DISMISS and PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING (Document Nos. 9 and 22)*

NEIMAN, Chief United States Magistrate Judge.

Alleging ineffective assistance of his criminal defense attorneys approximately one decade ago, Shaun Finn ("Petitioner"), a state prisoner serving a fifteen to sixteen-year sentence for rape of a child with force, among other counts, brings this petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2254. Michael Thompson and the Commonwealth of Massachusetts ("Respondents") have filed a motion to dismiss the petition in which they raise a narrowly-focused statute of limitations defense. Respondents' motion and Petitioner's request for an evidentiary hearing have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, the court will recommend that Respondents' motion to dismiss be allowed and that Petitioner's request for an evidentiary hearing be denied.

### I. BACKGROUND

Given the helpful precision which the parties' counsel have brought to this somewhat lengthy matter, the salient facts upon which the parties agree can be summarized quickly.[1] On June 25, 1996, Petitioner pled guilty to five counts of rape of child with force pursuant to Mass. Gen. L. ch. 265, § 22A, and to five counts of indecent assault and battery on a child under fourteen pursuant to Mass. Gen. L. ch. 265, § 13B. One week later, on July 1, 1996, Petitioner was sentenced to fifteen to sixteen years in prison by Superior Court Judge Constance Sweeney.

What happened on and between those two dates—June 25 and July 1, 1996—was the main focus of Petitioner's post-judgment proceedings. Petitioner asserted, and continues to assert, that his trial counsel, Joseph Bernard, was unprepared for trial and, hence, "pressured" and "intimi-

---

1. On October 13, 2006, this court appointed Harry L. Miles to represent Petitioner. *See* 18 U.S.C. §§ 3006A(a)(2)(B) and (b). In preparing this report and recommendation, the court has carefully considered both Petitioner's original *pro se* opposition (Document No. 12), the supplemental opposition filed by Mr. Miles (Document No. 20), and the unopposed supplemental statement of facts (Document No. 26, hereinafter "Pet'r's Facts"). The court thanks Mr. Miles for his most able representation of Petitioner in this matter.

dated" him into pleading guilty on June 25th. (See Pet'r's Facts ¶¶ N–AA.) Between the cited dates, Petitioner maintains, he sought to replace Bernard with another attorney, Dale Bass, who assertedly notified the district attorney's office that he intended to represent Petitioner but "was on vacation [and] had not filed an appearance." (*Id.* ¶ CC.) On July 1st, Petitioner continues, Judge Sweeney "refused to permit him to withdraw his guilty plea" even though he "reiterated that he never had committed the acts to which he had pled, and that he had pled guilty [only] because Attorney Bernard had intimidated him." (*Id.* ¶ DD.) [2]

On July 11, 1996, Petitioner, apparently proceeding *pro se*, filed an appeal. He also claims that he "immediately"—although no exact date is alleged—"engaged Attorney Bass to file a motion for a new trial under Mass. R.Crim. P. 30." (Pet'r's Facts ¶ EE.) In two ensuing paragraphs, Petitioner then alleges the following, again without providing exact dates:

> HH. Attorney Bass did not file the motion for new trial. He did not explain the delay to Petitioner. Petitioner reasonably believed that Attorney Bass was in the process of preparing and filing the motion for new trial. Instead, after months of delay, Attorney Bass withdrew from the case and refunded a portion of the retainer which he had received from Petitioner's mother.
> GG. Petitioner's family immediately sought to engage counsel to substitute for Attorney Bass. Petitioner's family engaged the services of Attorney John H.
> LaChance, who filed the motion for new trial on August 31, 1998. Administrative

errors in the Clerks' Office over which he had no control delayed Petitioner's exhaustion of his state remedies.

(*Id.* ¶¶ HH, GG.)

Despite Petitioner's vagueness as to when Bass's alleged actions (or inactions) occurred, there is no dispute that Petitioner withdrew his appeal on August 1, 1997, *i.e.,* approximately thirteen months *before* his new counsel, LaChance, filed a motion for a new trial. Nor is there any dispute that Judge Sweeney granted Petitioner a four-day evidentiary hearing on his claims during the Fall of 1999, or that Judge Sweeney denied that motion on August 8, 2002, or that Petitioner's motion for a new trial was finally resolved on June 9, 2005, when the Massachusetts Supreme Judicial Court denied his application for further appellate review. Petitioner filed the instant petition on May 16, 2006.

## II. DISCUSSION

Respondents argue that the petition is not only barred by the one-year limitations period for *habeas* cases found in 28 U.S.C. § 2244(d)(1) but is ineligible for either statutory or equitable tolling. For his part, Petitioner skips right to the equitable tolling issue, thereby enabling the court to move quickly through Respondents' initial arguments. In the end, the court will agree with Respondents that the petition is untimely and not saved by statutory or equitable tolling.

### A. *The Limitations Period*

There is no dispute that the one-year limitations period in the following provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

---

**2.** As noted in the sealed state record, Bernard was present at the July 1st sentencing, but Petitioner refused to have him speak on his behalf; accordingly, Judge Sweeney "accept-

ed [Petitioner]'s decision not to consult anymore with his lawyer and proceeded with the sentencing hearing." (Document No. 23 at 245.)

which became effective on April 24, 1966, applies:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from ... (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1)(A). As is clear, this one-year limitations period commences on the date when a prisoner's judgment becomes "final." *Id.*

Respondents first argue that, because Petitioner pled guilty, the judgment against him became final on the date he was *sentenced,* July 1, 1996. *See, e.g., Commonwealth v. Balliro,* 437 Mass. 163, 769 N.E.2d 1258, 1262 (2002) (noting that after a defendant pleads guilty "nothing more is required except for the court to give judgment and sentence") (citations omitted); *United States v. Hines,* 802 F.Supp. 559, 571 (D.Mass.1992) ("Under Massachusetts law, a 'conviction' is an adjudication of guilt either by way of entry of a formal guilty plea or an admission to sufficient facts or after a finding of guilt by jury verdict."). In this case, however, Petitioner sought "direct review" by filing a notice of appeal; accordingly, the court will assume *arguendo* that Petitioner's judgment did not become "final" until August 1, 1997, *i.e.,* the date he withdrew his "direct" appeal. *See* 28 U.S.C. § 2244(d)(1)(A). Thus, absent statutory or equitable tolling, Petitioner had until August 1, 1998, at the very latest to apply for *habeas* relief. Unfortunately for Petitioner, his petition, dated May 16, 2006, is nearly eight years late.

### B. *Statutory Tolling*

Despite the fact that the petition is late on its face, Respondents acknowledge that the AEDPA contains the following statutory tolling provision: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Respondents also acknowledge, for argument's sake, that Petitioner's motion for a new trial, which was filed on August 31, 1998, was a "properly filed application for State post-conviction or other collateral review" and that said motion was "pending" continuously from August 31, 1998, until June 9, 2005.

Respondents argue, however, that this statutory tolling provision does not make the petition timely because, as is obvious, nothing was "pending" between August 1, 1997, and August 31, 1998, a period of thirteen months. Strictly construed, Respondents assert, Petitioner's *habeas* clock ran out on August 1, 1998, or about one month *prior* to his seeking collateral review. The court agrees and, in any event, Petitioner does not contest the point.[3]

### C. *Equitable Tolling*

Given the analysis so far, Petitioner's only hope of avoiding dismissal, as he appears to concede, is to have the court "equitably toll" the one-year limitations period because his attorney, Bass, "abandoned" him sometime between his sentencing on July 1, 1996, and August 31, 1998, when his new attorney, LaChance, filed a motion for a new trial. To be sure, the First Circuit (but not the Supreme Court) has only recently held that equitable toll-

---

**3.** It also appears that nothing was "pending" between June 9, 2005, and May 16, 2006, another eleven months. Neither party addresses that issue.

ing is available in *habeas* cases. *See Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir.2004). For the reasons which follow, however, the court does not believe that such tolling encompasses the circumstances which Petitioner presents.

██ The doctrine of equitable tolling in this circuit, as both parties note, can be invoked only "sparingly" in the *habeas* context and is "justified only in extraordinary circumstances." *Neverson*, 366 F.3d at 42 (citations omitted). *See also David v. Hall*, 318 F.3d 343, 346 (1st Cir.2003) (opining, prior to formal adoption of doctrine, that equitable tolling should be employed "only for the most exceptional reasons"); *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir.2002) ("We have made it pellucid that equitable tolling, if available at all", may be invoked only in "extraordinary circumstances."). It is also clear that a party seeking to invoke equitable tolling "bears the burden of establishing the basis for it," including a showing that the case is "extraordinary" and that he himself acted with "due diligence." *Neverson*, 366 F.3d at 41, 42. *See also Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (assuming that if equitable tolling applies in the *habeas* context, the litigant seeking to apply the doctrine "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way"). Petitioner has failed to bear those burdens here.

First, while Petitioner acknowledges that equitable tolling cannot rest upon an attorney's ordinary negligence, *see David*, 318 F.3d at 345–46, and that, in the usual case, an attorney's error is attributed to his client, *Dunker v. Bissonnette*, 154 F.Supp.2d 95, 107 (D.Mass.2001), he makes little effort to escape this caselaw. Also standing in Petitioner's way is the fact that

"[i]gnorance of the law alone, even for incarcerated *pro* se prisoners, does not excuse an untimely filing," *Lattimore v. Dubois*, 311 F.3d 46, 55 (1st Cir.2002) (citation omitted), and that "equitable tolling is appropriate only when circumstances beyond the petitioner's control have prevented him from filing on time," *Neverson*, 366 F.3d at 42 (also noting that "[i]n the habeas context particularly, care is required to avoid upsetting the strong concern for finality embodied in § 2254") (citations and internal quotation marks omitted).

Second, and perhaps more to the point, Petitioner has not established *any* factual justification for equitable tolling. As the First Circuit has explained, "conclusory assertions rarely will suffice to meet [a petitioner's] burden" of establishing the basis for equitable tolling. *Trenkler v. United States*, 268 F.3d 16, 25 (1st Cir. 2001). Here, Petitioner's statements explaining the delay are cryptic at best and omit certain critical dates. For example, it is unclear when (if ever) Bass entered an appearance, when (if ever) Bass withdrew and/or refunded a portion of Petitioner's retainer, when (if ever) Petitioner retained LaChance, or when (if ever) LaChance appeared on Petitioner's behalf. Put bluntly, there is no way for the court to conclude, as Petitioner avers, that he acted with "due diligence" or that "extraordinary circumstances" prevented him from promptly preserving his rights.

To be sure, Petitioner argues that his situation became "extraordinary" when Bass "abandoned" him. But this assertion is made in the most general way and the factual record reviewed by the court is insufficient to support it. Weakening Petitioner's position even further is that fact that he has cited no federal *habeas* case, and this court has found none, applying equitable tolling on the basis of alleged attorney "abandonment." At best, Peti-

tioner cites an employment discrimination case which the Sixth Circuit remanded for a fuller determination by the district court as to whether the plaintiff's attorney "abandoned" him due to the attorney's "own mental illness." *See Cantrell v. Knoxville Comm'y Dev. Corp.*, 60 F.3d 1177, 1179–80 and n. 1 (6th Cir.1995) (noting the undisputed evidence that the attorney had been "removed from the active practice of law due to his mental state" and that his license had been "transferred to disability inactive status"). No such claim is made here. In short, Petitioner's equitable tolling argument is impermissibly thin and the court, therefore, is prepared to recommend that Respondents' motion to dismiss be allowed.

Before formally reaching that conclusion, however, the court adds one point. Briefing in this case ended on February 6, 2007. Two weeks later, the Supreme Court issued a section 2254 equitable tolling case, *Lawrence v. Florida*, —— U.S. ——, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007). Neither *Lawrence* nor the First Circuit's recent application of *Lawrence* in *Trapp v. Spencer*, 479 F.3d 53 (1st Cir. 2007), however, changes this court's recommendation.

"In *Lawrence*", the First Circuit noted, "the Supreme Court again sidestepped the question of whether equitable tolling ever applies to time limits for the filing of federal habeas petitions by state prisoners, and simply assumed *arguendo* that equitable tolling is available." *Trapp*, 479 F.3d at 59 (citing *Lawrence*, 127 S.Ct. at 1085–86). Even so, the First Circuit explained, "the Court referred to the standards for equitable tolling articulated in *Pace v. DiGuglielmo*, 544 U.S. [at 418, 125 S.Ct.at 1814–15]: a petitioner must show that he has been pursuing his rights diligently and that some extraordinary circumstance prevented him from making a timely filing."

*Id.* (citing *Lawrence*, 127 S.Ct. at 1085–86). For all the reasons noted, there has been no such showing in the instant case.

This does not mean, of course, that the caselaw is static. In *Trapp* itself, the First Circuit listed a variety of "factors"— which the court essentially adopted from Magistrate Judge Marianne B. Bowler's underlying decision—that courts may use to determine "whether or not to grant equitable tolling in a *habeas* case." *Id.*, 479 F.3d at 61. When applied here, those factors only confirm that equitable tolling is inappropriate.

First, as the First Circuit recognized, the cited factors are simply a compilation of factors from *Pace* and the First Circuit's own precedent. *See id.* Thus, according to the First Circuit, *habeas* courts must continue to evaluate:

1. [t]he petitioner's own diligence in pursuing habeas relief[;]

2. [w]hether some extraordinary circumstance prevented the petitioner from making a timely filing[;]

3. [t]he petitioner's diligence in the pursuit of other post-conviction remedies and the process already afforded in the state system[;]

4. [a]ny prejudice to the prosecution that would result from tolling and possible retrial[;]

5. [t]he fact that equitable tolling is not available in cases of dubious merit[; and]

6. [w]hether or not the case is capital case and whether or not the petitioner has been sentenced to death.

*Id.* (citations omitted). As indicated, factors 1 through 3 do not favor Petitioner here; there is no evidence of diligence or exceptional circumstances. Factor 4 is certainly of no help to Petitioner as it concerns prejudice to the *prosecution.* Further, the merits of Plaintiff's claim

seem dubious (factor 5), particularly given the lengthy state proceedings of which Petitioner took advantage. And finally, this is not a capital case (factor 6).

Second, both *Trapp* and *Lawrence* continue to acknowledge that "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel." *Lawrence*, 127 S.Ct. at 1084–85; *Trapp*, 479 F.3d at 60. That point has particular resonance here given the vague allegations Petitioner levels against Bass. For these additional reasons, therefore, the court will recommend that Respondents' motion to dismiss be allowed.

### D. *Petitioner's Request for an Evidentiary Hearing*

In addition to opposing Respondents' motion to dismiss, Petitioner has made a one-sentence request for an evidentiary hearing. The *habeas* statute provides, however, that the court shall *not* hold an evidentiary hearing unless the petitioner makes a variety of stringent showings, *e.g.*, that the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence" and that "the facts

underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

Petitioner has not undertaken any such effort here. Moreover, as indicated, Judge Sweeney afforded Petitioner a four-day evidentiary hearing on his claims during the Fall of 1999. Accordingly, the court has little choice but to recommend that Petitioner's request for an evidentiary hearing be denied.

### III. CONCLUSION

For the foregoing reasons, the court recommends that Respondents' motion to dismiss be ALLOWED and that Petitioner's request for an evidentiary hearing be DENIED.[4]

June 6, 2007

---

**4.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1 st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.