**James Leo LAWLESS III, Petitioner,**

v.

**M.S. EVANS, Warden, Respondent.**

**No. EDCV 07–0684–GW (RC).**

United States District Court, C.D. California.

April 4, 2008.

James Leo Lawless III, Soledad, CA, pro se.

Kevin R. Vienna, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

GEORGE H. WU, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered dismissing the habeas corpus petition and action as untimely.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On August 21, 2002, in San Bernardino County Superior Court case no. FSB09123, petitioner James Leo Lawless

III pleaded guilty to, and was convicted of, one count of murder in violation of California Penal Code ("P.C.") § 187 with special circumstances within the meaning of P.C. § 190.2(a)(15) and (17) (count 1) and one count of possession of a firearm by a felon with a prior in violation of P.C. § 12021(a)(1) (count 2), and petitioner admitted he personally used a firearm, a .357 magnum handgun, within the meaning of P.C. § 12022.5(a) when committing the offenses and that he had suffered prior convictions for murder and other offenses. Lodgment nos. 2–3, 5, 13. On August 21, 2002, pursuant to the plea agreement, petitioner was sentenced to life without the possibility of parole. Lodgment nos. 3, 5, 12–13. The petitioner did not appeal the judgment. Petition at 3.

On April 23, 2006,[1] petitioner filed a petition for writ of habeas corpus in the San Bernardino County Superior Court, which was denied on June 8, 2006. Lodgment nos. 6–7. On June 14, 2006, petitioner filed a habeas corpus petition in the California Court of Appeal, which was denied on August 4, 2006. Lodgment nos. 8–9. On August 17, 2006, petitioner filed an application for habeas corpus relief in the California Supreme Court, which was denied on March 21, 2007, with citation to *In*

*re Robbins*, 18 Cal.4th 770, 780, 77 Cal. Rptr.2d 153, 959 P.2d 311 (1998). Lodgment nos. 10–11.

## II

Effective April 26, 2007, petitioner, proceeding pro se, filed the pending habeas corpus petition under 28 U.S.C. § 2254 challenging his conviction and sentence on the ground he did not receive a fair competency hearing,[2] and on August 27, 2007, respondent filed a motion to dismiss the petition on the grounds it is untimely. On October 1, 2007, petitioner filed his opposition to the motion to dismiss, and on November 20, 2007, respondent filed a reply or supplemental memorandum.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") worked substantial changes to the law of habeas corpus. *Moore v. Calderon*, 108 F.3d 261, 263 (9th Cir.), *cert. denied*, 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Of specific importance to the petitioner's claims are the revisions made to 28 U.S.C. § 2244(d), which now provides:

> (1) A 1–year period of limitation shall apply to an application for a writ of

---

1. "Under the 'prison mailbox rule' ... a prisoner's ... habeas petition is deemed filed when he hands it over to prison authorities for mailing in the district court." *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir.2001) (citation omitted); *Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988). The "[mailbox] rule applies to prisoners filing habeas petitions in both federal and state courts." *Huizar*, 273 F.3d at 1223; *Anthony v. Cambra*, 236 F.3d 568, 574–75 (9th Cir.2000), *cert. denied*, 533 U.S. 941, 121 S.Ct. 2576, 150 L.Ed.2d 739 (2001).

2. The minute orders from the San Bernardino County Superior Court show that on June 18, 1997, the Superior Court found petitioner mentally incompetent to stand trial and petitioner was referred to the Department of

Mental Health, which sent petitioner to Patton State Hospital for treatment. Lodgment nos. 3, 14. On August 6, 1997, the Superior Court determined petitioner had regained mental competency, and criminal proceedings were reinstated, and on February 25, 1998, petitioner's counsel stipulated the Superior Court could proceed with petitioner's criminal trial based on a report from Patton State Hospital that petitioner was competent. *Id.* The issue of petitioner's competency arose again on July 19, 2001, and the Superior Court raised concerns about petitioner's mental competence on July 24, 2001. *Id.* On February 11, 2002, the Superior Court held a hearing, found petitioner mentally competent, and reinstated trial proceedings. *Id.*

habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> \*   \*   \*   \*   \*   \*

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The petitioner did not appeal his convictions and sentence to the California Court of Appeal, and the judgment became final 60 days after petitioner was sentenced on August 21, 2002. *See* former California Rules of Court, Rule 31(d) (2002); *Lewis v. Mitchell,* 173 F.Supp.2d 1057, 1060 (C.D.Cal.2001). Thus, for petitioner, the statute of limitations began to run on October 22, 2002,[3] and expired on October 21, 2003, one year after his state court conviction became final. The instant action was not filed for more than three years after the statute of limitations ran; thus, it is untimely.

Nevertheless, this Court must consider whether the statute of limitations was tolled while petitioner's applications for collateral relief were pending in the California courts. Here, since petitioner filed his state habeas corpus petitions in 2006, after the statute of limitations had expired, these petitions neither tolled nor revived the expired limitations period. *Jiminez v.*

*Rice,* 276 F.3d 478, 482 (9th Cir.2001), *cert. denied,* 538 U.S. 949, 123 S.Ct. 1627, 155 L.Ed.2d 492 (2003); *Green v. White,* 223 F.3d 1001, 1003 (9th Cir.2000). Moreover, petitioner's habeas corpus petition to the California Supreme Court was denied with citation to *Robbins,* which means the California Supreme Court rejected the habeas corpus petition as untimely. *See Thorson v. Palmer,* 479 F.3d 643, 645 (9th Cir.2007) ( [T]he California Supreme Court clearly rejected [petitioner's] habeas petition as "untimely" when it cited "the very page" of *In re Robbins* "that sets forth 'the basic analytical framework' governing California's timeliness determinations in habeas corpus proceedings."). Thus, this habeas corpus petition was not "properly filed" and would have not tolled the statute of limitations even if filed within the limitations period. *See Pace v. DiGuglielmo,* 544 U.S. 408, 417, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005) ("Because the state court rejected petitioner's [habeas] petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."); *Thorson,* 479 F.3d at 644 ("[B]ecause the California Supreme Court denied [petitioner's] state habeas petition as untimely, [petitioner] was not entitled to tolling while his untimely petition was pending in state court."); *Bonner v. Carey,* 425 F.3d 1145, 1149 (9th Cir.2005), *amended by,* 439 F.3d 993 (9th Cir.) ("Under *Pace,* if a state court denies a petition as untimely, none of the time before or during the court's consideration of that petition is statutorily tolled."), *cert. denied,* — U.S. ——, 127 S.Ct. 132, 166 L.Ed.2d 97 (2006).

Finally, there is no basis for this Court to equitably toll AEDPA's statute of

---

**3.** Since the sixtieth day after August 21, 2002, was a Sunday, October 21, 2002, was the final day for petitioner to timely file a notice of appeal. California Code of Civ. Proc.

§ 12a(a); former California Rules of Court, Rule 45(a) (2002). Rule 45(a) was renumbered Rule 8.60 effective January 1, 2007.

limitations. A habeas petitioner is entitled to equitable tolling "only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miles v. Prunty,* 187 F.3d 1104, 1107 (9th Cir.1999) (citation and internal quotation marks omitted); *Espinoza–Matthews v. People of the State of Cal.,* 432 F.3d 1021, 1026 (9th Cir.2005). The petitioner bears the burden of proving: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace,* 544 U.S. at 418, 125 S.Ct. at 1814; *Mendoza v. Carey,* 449 F.3d 1065, 1068 (9th Cir.2006). Additionally, the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate causes of his untimeliness." *Spitsyn v. Moore,* 345 F.3d 796, 799 (9th Cir.2003) (citations and internal quotation marks omitted); *Roy v. Lampert,* 465 F.3d 964, 969 (9th Cir.2006), *cert. denied sub nom., Belleque v. Kephart,* — U.S. ——, 127 S.Ct. 1880, 167 L.Ed.2d 386 (2007).

■ The petitioner contends he is entitled to equitable tolling for several reasons. Initially, he requests equitable tolling because of his pro se status. Opposition at 2. However, "[i]t is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy,* 465 F.3d at 970; *Doe v. Menefee,* 391 F.3d 147, 175 (2d Cir.2004) ("[P]ro se status does not in itself constitute an extraordinary circumstance meriting tolling...."), *cert. denied,* 546 U.S. 961, 126 S.Ct. 489, 163 L.Ed.2d 364 (2005).

The petitioner also conclusorily claims he is entitled to equitable tolling because his attorney "abandoned [him] after sentencing." Opposition at 2. Although particularly egregious attorney misconduct "may constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations[,]" *Spitsyn,*

345 F.3d at 800, petitioner has not set forth any factual basis for his abandonment claim nor presented any evidence beyond his conclusory assertion. Therefore, petitioner has not met his burden to demonstrate he is entitled to equitable tolling on this ground. *See Roberts v. Cockrell,* 319 F.3d 690, 695 (5th Cir.2003) (conclusory equitable tolling claim is without merit when petitioner provides no information necessary to properly address the claim); *Trenkler v. United States,* 268 F.3d 16, 25 (1st Cir.2001) (conclusory assertions rarely will suffice to meet the burden of demonstrating entitlement to equitable tolling); *Finn v. Thompson,* 497 F.Supp.2d 110, 114–15 (D.Mass.2007) (conclusory assertion that petitioner's attorney abandoned him was insufficient to establish petitioner acted with due diligence and extraordinary circumstances prevented him from timely filing his federal habeas corpus petition).

The petitioner next contends he is entitled to equitable tolling because the California courts did not reject his habeas corpus petitions as untimely. However, this claim is not correct; rather, as discussed above, the California Supreme Court clearly rejected petitioner's habeas corpus petition as untimely. *See* Lodgment no. 11.

■ Finally, and most importantly, petitioner contends he is entitled to equitable tolling because he is developmentally disabled and mentally incompetent. Opposition at 2–7. Of course, mental incompetency is an "extraordinary circumstance beyond a [petitioner's] control" that may, in certain circumstances, require the equitable tolling of AEDPA's statute of limitations. *Calderon v. United States District Court (Kelly),* 163 F.3d 530, 541 (9th Cir. 1998) (en banc), *cert. denied,* 526 U.S. 1060, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999), *overruled in part on other grounds,*

*Woodford v. Garceau,* 538 U.S. 202, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003); *Laws v. Lamarque,* 351 F.3d 919, 923 (9th Cir. 2003). "Where a habeas petitioner's mental incompetence **in fact** caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitable tolled." *Laws,* 351 F.3d at 923 (emphasis added); *see also Nara v. Frank,* 264 F.3d 310, 320 (3d Cir.2001) ("[M]ental incompetency is not a per se reason to toll a statute of limitations. Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition."). This Court, thus, must determine whether petitioner was in fact mentally incompetent during the period AEDPA's statute of limitations was running until petitioner filed his federal habeas corpus petition—from October 22, 2002, to April 26, 2007. If so, this Court must then determine whether such incompetency "in fact caused [petitioner] to fail to meet the AEDPA filing deadline. . . ."

Initially, the Court notes the San Bernardino County Superior Court conducted an evidentiary hearing and found petitioner competent to stand trial on February 11, 2002, and subsequently determined petitioner continued to be competent on August 21, 2002, when petitioner entered his guilty plea. Lodgment nos. 3, 13–14. These findings, however, do not address "whether [petitioner's] mental condition has deteriorated since [these proceedings] such that he fell below a minimum standard of legal competence." *Laws,* 351 F.3d at 923. Rather, to answer this question, respondent has provided the Court with extensive medical records documenting the state of petitioner's mental health since his conviction and sentencing.[4]

The Court, having conducted an in-depth review of the almost 500 pages of petitioner's mental health records, finds petitioner's mental illness did not render him incompetent during the period the statute of limitations was running. Rather, petitioner's medical records clearly demonstrate that, while incarcerated, petitioner's mental condition has responded well to treatment, which has included group therapy and such medications as Seroquel[5] and Wellbutrin,[6] and his mental condition has been mostly stable. For instance, on November 5, 2002, only two weeks after the statute of limitations began to run, K. Young–Gomez, Psy. D., a clinical psychologist, opined petitioner's fund of cognitive information, intellectual functions, organization of thought, association of thought, reality contact, thought quality, orientation, memory, attention and concentration were all within normal limits, his insight and judgment were fair-to-good, and petitioner had not experienced any auditory hallucinations or paranoia recently, although he did have a history of them, and

---

4. The petitioner also has attached various medical reports to his opposition to respondent's motion to dismiss. However, most of these reports are from 1996 and 1997, Opposition, Exhs. B–C, E, and have "little bearing" on petitioner's competency in 2002 and later. *Laws,* 351 F.3d at 923. Other documents presented by petitioner are medical evaluations conducted in September 2001, which were considered by the Superior Court in determining petitioner was competent to stand trial on February 11, 2002. *See* Opposition, Exhs. A, C, E135–38.

5. "Seroquel combats the symptoms of schizophrenia, a mental disorder marked by delusions, hallucinations, disrupted thinking, and loss of contact with reality." *The PDR Family Guide to Prescription Drugs,* 610 (8th ed.2000).

6. "Wellbutrin . . . is given to help relieve certain kinds of major depression. . . ." *Id.* at 737.

found petitioner's Global Assessment of Functioning ("GAF") was 65.[7] Lodgment no. 15 at 370–71. Other reports after November 5, 2002, are similar. *See,* e.g., Lodgment no. 15 at 150–51, 155, 181–84, 186, 190, 194, 198–206, 208, 215, 258–59, 263, 265, 268, 271, 274, 278, 280, 282–83, 308, 321, 347, 358, 367, 417, 453–54, 456–57, 460–63, 465–67, 487–90, 495–98. Indeed, despite petitioner's claim that he is developmentally disabled, on August 1, 2004, J. Roberts, a licensed clinical social worker, found that petitioner, based on testing and a personal interview and evaluation, had "no cognitive or adaptive functioning deficits ... which would justify inclusion of [petitioner] in the developmental disabilities program." Lodgment no. 15 at 311–12. Most recently, on April 12, 2006, J. Scaramozzino, Ph.D., a psychologist, opined:

> [Petitioner] has demonstrated very stable functioning ... [d]uring the [past] six months.... [H]e has not demonstrated any clinically significant fluctuations in mood or in his overall mental status. He has not been observed to suffer from anxiety related symptoms. His behavior and observations of the same are not consistent with any type of perceptual disturbance either. He has managed his [activities of daily living] without any assistance. He is organized and goal directed in his speech without exception. Furthermore, he has not had any incidents of aggression, violence, threatening behavior, or self injurious gestures. He has coped quite well with

his placement.... He has spent his individual time drawing, often creating very sophisticated and intricate productions that he enjoys showing to others. He reads often and spends a tremendous amount of time on legal filings, appeals, etc. In fact, he is quite effective in advocating for himself and lower functioning [inmates].

Lodgment no. 15 at 164–65. Thus, since petitioner was not incompetent during the running of AEDPA's statute of limitations, he has not shown he was not unable to timely file his federal habeas corpus petition due to mental incompetency, and petitioner is not entitled to the equitable tolling of the statute of limitations on the ground of mental illness. *Lawrence v. Florida,* —— U.S. ——, 127 S.Ct. 1079, 1086, 166 L.Ed.2d 924 (2007).

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) entering Judgment dismissing the petition and action as untimely.

January 11, 2008.

---

**7.** A GAF reflects "the clinician's judgment of the individual's overall level of functioning" regarding only psychological, social and occupational functioning but not considering physical or environmental limitations. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th ed. (Text Revision) 2000); *Langley v. Barnhart,* 373 F.3d 1116, 1122–23 n. 3 (10th Cir.2004). A GAF of 61–70 indicates "[s]ome

mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 34 (4th ed. (Text Revision) 2000).